# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

DANIEL GETZ, individually and on
behalf of all others similarly situated,

                Plaintiff,

v.

VERIZON COMMUNICATIONS INC.,
a Delaware corporation,

                Defendant.

**Case No. 1:18-cv-04652**

## MEMORANDUM OF LAW IN SUPPORT OF VERIZON'S MOTION TO STAY AND COMPEL ARBITRATION

**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 419-5853
*Attorneys for Verizon Communications Inc.*

## <u>TABLE OF CONTENTS</u>

<u>PAGES</u>

TABLE OF AUTHORITIES ...................................................................................................ii

I.      STATEMENT OF FACTS ........................................................................................1

        A.      Plaintiff's Agreement to Arbitrate ...............................................................1

        B.      The Allegations of the Complaint.................................................................3

II.     ARGUMENT .............................................................................................................3

        A.      The FAA Requires Enforcement of Mandatory Arbitration Provisions.................3

        B.      The Arbitration Provision in the Verizon Customer Agreement Requires
                Arbitration of Plaintiff's Claims. ................................................................5

III.    CONCLUSION.........................................................................................................9

# <u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013).................................................................................1, 5

*Asa v. Verizon Commc'ns, Inc.*,
  No. 1:17-CV-256, 2017 WL 5894543 (E.D. Tenn. Nov. 29, 2017)......................................1, 7

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)...............................................................................5, 8

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................................1, 4

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*,
  776 F.3d 126 (2d Cir. 2015)......................................................................4

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...............................................................................4, 6

*Douce v. Origin*
  *ID TMAA* 1404-236-5547, No. 08 CIV.483 (DLC), 2009 WL 382708
  (S.D.N.Y. Feb. 17, 2009) (Cote, J.) ........................................................7

*Hamilton-Warwick v. Verizon Wireless*,
  No. CV 16-3461 (JRT/BRT), 2017 WL 1740462 (D. Minn. Apr. 12, 2017),
  *report and recommendation adopted*, No. CV 16-3461 (JRT/BRT), 2017 WL
  1743518 (D. Minn. May 3, 2017) ............................................................7

*Holick v. Cellular Sales of N.Y., LLC*,
  802 F.3d 391 (2d Cir. 2015)......................................................................5

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir.2004)......................................................................7

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
  252 F.3d 218 (2d Cir. 2001)......................................................................6

*Oldroyd v. Elmira Sav. Bank, FSB*,
  134 F.3d 72 (2d Cir. 1998)........................................................................5

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007)......................................................................5

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993)..................................................................................2

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)................................................................................5

*S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*,
    745 F.2d 190 (2d Cir. 1984)................................................................................2

*Sacchi v. Verizon Online LLC*,
    No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015)..................6, 7

*Scherkv. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974) ........................................3

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984)................................................................................................3

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)............................................................................................4

**STATUTES**

47 U.S.C. § 227 .........................................................................................................3

**OTHER AUTHORITIES**

27 F.C.C.R. 1830, 1834 (2012).................................................................................3

7 F.C.C.R. 8752, 8775 (1992)...................................................................................3

Defendant Verizon Communications Inc. ("Verizon") respectfully submits this memorandum in support of its motion to compel arbitration and stay this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* As part of his Customer Agreement, Plaintiff Daniel Getz agreed to arbitrate any claims that "in any way" arise out of or relate to the services or products he acquired from Verizon, or from any advertising of such products and services. That obligation clearly encompasses the claim Plaintiff advances here, which asserts that Verizon violated the Telephone Consumer Protection Act ("TCPA") when it allegedly sent him a communication via his Verizon texting service to inform him of an opportunity to acquire an upgraded iPhone. The United States Supreme Court has made it clear that district courts must "rigorously enforce" such individual arbitration clauses as written, including those that contain a class action waiver. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Accordingly, this action should be stayed, and Plaintiff should be compelled to arbitrate his claim on an individual basis.

## I. <u>STATEMENT OF FACTS</u>

### A. <u>Plaintiff's Agreement to Arbitrate</u>

Customers who order equipment, products, or services from Verizon must consent to a Customer Agreement. When a customer visits a Verizon retail store, the customer is presented with a tablet that provides a receipt setting forth the details of the customer's order. Declaration of Renada Lewis ("Lewis Decl."), at ¶¶ 2-3. This receipt confirms that the customer consents to the Verizon Customer Agreement, and the receipt advises the customer that he may review the complete Verizon Customer Agreement at www.vzw.com/myverizon. *Id.* at ¶ 3. Specifically, the receipt requires the customer to confirm that: "I agree to the Verizon Customer Agreement including . . . settlement of disputes by arbitration instead of jury trial." *Id.* Using the tablet, the customer has the opportunity to view the Customer Agreement itself by clicking on a button. *Id.* After the customer signs the receipt on the tablet, a copy of the receipt is then printed at the store

and provided to the customer.  *Id*.  Another copy of the receipt is then electronically stored in Verizon's customer database.  *Id*.

   Plaintiff Daniel Getz is a Verizon customer.[1]  According to Verizon's customer database, on October 19, 2016, Plaintiff visited a Verizon retail store in Coral Gables, Florida.  *See* Lewis Decl., Ex. A and at ¶ 3.  During this visit, Plaintiff subscribed to a Verizon plan affording data, talk, and text services, as part of a term agreement extending until October 19, 2018.  *Id*.  Also during this visit, Plaintiff purchased an Apple iPhone which this Verizon plan then serviced.  *Id*.  As per standard Verizon practice, Plaintiff signed a receipt that documented his order and thereby confirmed that "I agree to the Verizon Wireless Customer Agreement including . . . settlement of disputes by arbitration instead of jury trial. . . ."  *Id*.[2]  Plaintiff had the opportunity to review the full Customer Agreement through a tablet provided at the store, and, in addition, the receipt also advised Plaintiff of a webpage address where he could review the Customer Agreement.  *Id*.  That Customer Agreement, in turn, prominently makes clear (in all capital letters) that any disputes must be resolved by arbitration or small claims court:

> THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT.  EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB").

---

[1]  The Complaint admits that Plaintiff is a Verizon customer.  *See* n.1.
[2]  The receipt thus binds the customer to the Verizon Wireless Customer Agreement.  *See, e.g.*, *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42 (2d Cir. 1993) (enforcing arbitration based on agreement's reference to arbitration provision contained in another agreement, by applying contractual principle of incorporation by reference) (citing *S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 192, 195–96 (2d Cir. 1984) (same)).

*Id.*, Ex. B at 8 (capitalization in original).  The Customer Agreement also requires Plaintiff to pursue his claims in arbitration on an individual, non-class basis.  *Id.* ("**THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTION ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD**.") (emphasis and boldface in original).

### B.      The Allegations of the Complaint

Plaintiff commenced this putative class action against Verizon, seeking to recover damages allegedly resulting from his and others' alleged receipt of text messages promoting Verizon's product and service offerings.  Specifically, Plaintiff alleges that on October 27, 2017 – approximately a year after he consented to the Customer Agreement – either Verizon or a third party acting on its behalf sent Plaintiff two text messages to his cellular phone number promoting the new iPhone X.  Compl. at ¶¶ 9, 11.  Based on this factual allegation, Plaintiff's Complaint asserts a single claim against Verizon under the TCPA, 47 U.S.C. § 227.[3]

## II.      ARGUMENT

### A.      The FAA Requires Enforcement of Mandatory Arbitration Provisions

The FAA broadly requires enforcement of agreements to arbitrate claims.  9 U.S.C. § 1, *et seq.  See also Southland Corp. v. Keating*, 465 U.S. 1, 12-13 (1984).  Congress enacted the FAA to "revers[e] centuries of judicial hostility to arbitration agreements."  *Scherk v. Alberto-*

---

[3] In fact, communications between a wireless carrier and its customers are exempt from the TCPA.   *See* Report and Order, In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C.R. 8752, 8775 (1992).  In 2012, the FCC confirmed that "neither the TCPA nor its legislative history indicates that Congress intended to impede communications between wireless carriers and their customers regarding the delivery of customer services by barring calls to wireless consumers for which the consumer is not charged." Report and Order, In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1834 (2012).  Indeed, the FCC specifically confirmed that "wireless carriers may send free autodialed or prerecorded calls, including text messages, without prior written consent, if the calls are intended to inform wireless customers about new products that may suit their needs more effectively."  *Id.* at 1840–41.

*Culver Co.*, 417 U.S. 506, 510 (1974).   As the Supreme Court has explained, it is "beyond dispute that the FAA was designed to promote arbitration. [Our cases] have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' . . . and 'a liberal federal policy favoring arbitration agreements. . . .'" *Concepcion*, 563 U.S. at 345-46 (citations omitted).

Section 2 of the FAA expressly declares that all agreements to arbitrate are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."  FAA Section 3—the statute's key enforcement provision—requires a district court to stay any court proceeding while the claim is arbitrated:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.

This language "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on any issue as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  The "parties are generally free to structure their arbitration agreements as they see fit," and the court "must not lose sight of the purpose of the exercise: to give effect to the intent of the parties."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (citations and quotations omitted).   As a result, courts must "rigorously enforce agreements to arbitrate." *Dean Witter*, 470 U.S. at 221.  *See also Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129 (2d Cir. 2015).  Further, and as the United States Supreme Court has recently reminded, courts must give force to all of the terms of the arbitration agreement, including those that "specify with whom the parties choose to arbitrate their disputes and the

rules under which that arbitration will be conducted." *Italian Colors*, 570 U.S. at 233 (alteration in original) (citations and quotations omitted).

Accordingly, when presented with a motion to compel arbitration, the district court must resolve two questions: (1) whether the plaintiff consented to an agreement to arbitrate and, if so, (2) whether the scope of that agreement extends to the claim at issue. *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (citation omitted). In resolving the second question, the court will resolve any doubt about the scope or breadth of the agreement in favor of arbitration where, as here, that provision indicates a broad intent to arbitrate claims. Indeed, "[w]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citations omitted). As the Second Circuit has further explained, this presumption of arbitrability means that "the federal courts are *obliged* to find a particular claim falls within the scope of an arbitration clause." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389-90 (2d Cir. 2007) (emphasis added) (citation omitted). *See also Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir. 1998) ("Federal policy strongly favors arbitration."); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (same).

**B.   The Arbitration Provision in the Verizon Customer Agreement Requires Arbitration of Plaintiff's Claims.**

Plaintiff is bound by the arbitration provisions contained within the Customer Agreement, and those provisions unmistakably require Plaintiff to arbitrate his TCPA claim on and

individual basis.  This Court should therefore stay this action pursuant to FAA Section 2 and compel Plaintiff to arbitrate his claims.

There is no question that Plaintiff consented to an agreement to arbitrate.  In October 2016, he subscribed to a Verizon service plan, purchased an iPhone, and agreed to arbitrate his disputes pursuant to the Verizon Customer Agreement.  In particular, Plaintiff signed a receipt to specifically acknowledge that "I agree to the Verizon Wireless Customer Agreement including . . . settlement of disputes by arbitration instead of jury trial," and the Customer Agreement itself contains a provision requiring resolution of disputes in arbitration or in small claims court. Lewis Decl., Exs. A and B.  Accordingly, the parties entered into a valid agreement to arbitrate which must be "rigorously enforce[d]."  *Dean Witter*, 470 U.S. at 221.

Moreover, the Customer Agreement's arbitration provision clearly encompasses the TCPA claim that Plaintiff advances in his Complaint.  That provision encompasses "*any* dispute that in *any* way relates to or arises out of . . . *any* equipment, products and services" that Plaintiff received from Verizon, including "*any* advertising for *any* such products and services."  Lewis Decl., Ex. B (emphasis added).  As Judge Ronnie Abrams held in *Sacchi v. Verizon Online LLC*, the broad arbitration provision in the Verizon Customer Agreement invokes the presumption of arbitrability.  No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). The Complaint alleges that Verizon sent Plaintiff the challenged texts via the texting service that Verizon provides to Plaintiff, which he received on the iPhone product that he purchased from Verizon, and the substance of the text was an alleged advertisement for an additional product to be serviced by his Verizon plan.  Accordingly, Plaintiff's claim falls within the scope of the arbitration provision.

Federal courts, including the Southern District of New York, have consistently held that the same or similar arbitration provisions to that at issue here broadly encompasses claims between the parties.  For example, in *Sacchi*, Judge Abrams required the arbitration of the plaintiff's claims that his online service was not as speedy as advertised.  No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015).  As Judge Abrams properly held, the Verizon arbitration clause "uses 'very expansive language' covering 'any dispute that in any way relates to or arises out of this agreement . . . .'"  *Id.* at *9.  In another case involving a broadly worded arbitration clause in a wireless service agreement, this Court compelled arbitration of a claim arising out of the carrier's termination of a customer's service because a broad arbitration clause creates "'a presumption of arbitrability and arbitration of even a collateral matter will be ordered,' including 'matters going beyond the interpretation or enforcement of particular provisions of the contract which contains the arbitration clause.'"  *Douce v. Origin ID TMAA 1404-236-5547*, No. 08 CIV.483 (DLC), 2009 WL 382708, at *3 (S.D.N.Y. Feb. 17, 2009) (Cote, J.) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir.2004) (involving federal statutory and U.S. constitutional claims).  And when addressing the same Verizon Customer Agreement arbitration provision at issue here, another district court held that it could "easily conclude" that plaintiff's TCPA and negligence claims against Verizon involving lack of access to his online account "arise from the 'equipment, products and services' he received," and therefore were subject to arbitration.  *Asa v. Verizon Commc'ns, Inc.*, No. 1:17-CV-256, 2017 WL 5894543 (E.D. Tenn. Nov. 29, 2017).  *See also*, *Hamilton-Warwick v. Verizon Wireless*, No. CV 16-3461 (JRT/BRT), 2017 WL 1740462 (D. Minn. Apr. 12, 2017), *report and recommendation adopted*, No. CV 16-3461 (JRT/BRT), 2017 WL 1743518 (D. Minn.

May 3, 2017) (compelling arbitration of customer's claims for overbilling and assessment of improper fees).

The Complaint suggests that Plaintiff's TCPA claim lies outside the scope of the Customer Agreement's broad arbitration provision because "this dispute relates to advertising and marketing practices regarding products that Plaintiff neither purchased nor otherwise received from Verizon." Compl. at n.1.  In other words, Plaintiff evidently believes that the arbitration provision would *only* apply if had he purchased the iPhone X promoted in the texts that he allegedly received.  But that is not what the arbitration provision says – it encompasses "any" dispute that in "any way" relates to or arises out of "any" equipment, products and services that Plaintiff received from Verizon, including "advertising" of such products and services.   Plaintiff received the challenged text messages on his Verizon-supplied cell phone, through the Verizon texting network, and his claims relates to the alleged advertising of Verizon products.  That brings the dispute within the scope of the Customer Agreement's arbitration provision; indeed, the very purpose of the alleged advertisement was to encourage Plaintiff to continue his current Verizon phone service on a new device.  And even if there were any doubt on this point (and there is not), the presumption in favor of arbitrability requires that such doubt be resolved in favor of arbitration and it certainly cannot be said "with positive assurance" that Plaintiff's TCPA claim falls outside of the provision's scope.  *AT & T*, 475 U.S. at 650.

Accordingly, the arbitration provision of the Customer Agreement encompasses the claims alleged against Verizon in the Complaint.  Because Plaintiff agreed to arbitrate his claims in this matter, Verizon requests that this Honorable Court stay Plaintiff's claims against it and compel Plaintiff to arbitrate those claims.

III.   <u>**CONCLUSION**</u>

For the foregoing reasons, the Court should issue an Order staying this action and compelling Plaintiff to proceed with arbitration.

Respectfully submitted,

By:   _/s/ Gavin J. Rooney_____
       Gavin J. Rooney, Esq.
       **LOWENSTEIN SANDLER LLP**
       1251 Avenue of the Americas
       New York, New York 10020
       (212) 419-5853
       grooney@lowenstein.com
       *Attorneys for Defendant Verizon*
       *Communications, Inc.*

Date:   July 23, 2018